F I L E D

DEC 1 0 2014

THOMAS G BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE WOOD

| | |
|---|---|
| UNITED STATES OF AMERICA ) | No. 14CR 716 |
| v. ) | |
| ) | Violations: Title 18, United States Code, |
| SCOTT GOLDSTEIN ) | Sections 1341 and 1343 |

**COUNT ONE**          MAGISTRATE JUDGE COX

The SPECIAL SEPTEMBER 2014 GRAND JURY charges:

1. Beginning in or about September 2010 and continuing until in or about July 2012, at Elk Grove Village, in the Northern District of Illinois, Eastern Division, and elsewhere,

SCOTT GOLDSTEIN,

defendant herein, devised, intended to devise, and participated in a scheme to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing this scheme caused wire transmissions to be sent in interstate commerce and deposited letters to be sent and delivered by a commercial interstate carrier.

2. It was part of the scheme that defendant SCOTT GOLDSTEIN fraudulently obtained at least $245,500 from at least 18 victims by falsely representing that defendant GOLDSTEIN would find investors to make a capital investment in or lend money to the victims' businesses or would invest the victims' money on behalf of the victim in

1

business opportunities, including the purchase of real estate.

3. It was further a part of the scheme that defendant SCOTT GOLDSTEIN falsely represented to victims that defendant GOLDSTEIN was president and CEO of European Assets, Inc., a venture capital firm which purportedly had raised multiple millions of dollars in investment capital and which had numerous investment managers and sales consultants at offices in Elk Grove Village, Illinois, as well as in Florida and New York.

4. It was further a part of the scheme that defendant SCOTT GOLDSTEIN subscribed to multiple email accounts through which defendant GOLDSTEIN solicited money from victims and pretended to be other individuals associated with European Assets, including an attorney representing European Assets, for purposes of falsely representing to victims that European Assets was a legitimate successful business.

5. It was further a part of the scheme that defendant SCOTT GOLDSTEIN opened a bank account at Chase Bank in the name of European Assets, with defendant GOLDSTEIN as the purported president and a family member as the purported director of European Assets.

6. It was further a part of the scheme that defendant SCOTT GOLDSTEIN opened a bank account at Bank of America in the name of European Assets, with defendant GOLDSTEIN as the purported president and CEO and a family member as the purported director and secretary of European Assets.

7. It was further a part of the scheme that defendant SCOTT GOLDSTEIN joined the Crystal Lake Country Club for the purpose of falsely representing to potential victims who were members of the country club that defendant GOLDSTEIN was a wealthy individual who could provide lucrative business and investment opportunities and who could be trusted in financial matters.

8. It was further a part of the scheme that defendant SCOTT GOLDSTEIN falsely represented to victims that, in return for upfront fees of between approximately $1,500 and $5,500, defendant Goldstein could obtain funding, in the form of venture capital and loans in amounts of from approximately $250,000 to $10 million.

9. It was further a part of the scheme that defendant SCOTT GOLDSTEIN falsely represented to victims that defendant GOLDSTEIN had the opportunity to purchase distressed and foreclosed real estate, including real estate from the Federal Home Loan Mortgage Corporation at greatly reduced prices through a purported "Freddie/Fannie 10 Block Purchase Program" and provided to the victims literature for this purported real estate purchase program bearing the letter-head of Freddie Mac. Defendant GOLDSTEIN knew that this purported real estate purchase program did not exist.

10. It was further a part of the scheme that defendant SCOTT GOLDSTEIN falsely represented to victims that their investments with European Assets were low risk and would earn short term returns as high as double the amount invested.

11. It was further a part of the scheme that defendant SCOTT GOLDSTEIN prepared and provided to victims written agreements with European Assets which were designed and intended to lull the victims by falsely promising the victims that their money would be returned if the investment was not finalized.

12. It was further a part of the scheme that defendant SCOTT GOLDSTEIN prepared and provided to victims draft Quit Claim Deeds purporting to represent the documentation the victims would receive when their real estate investments were finalized.

13. It was further a part of the scheme that defendant SCOTT GOLDSTEIN falsely promised to send to victims packages containing completed Quit Claim Deeds and keys to the real estate purchased through their investments.

14. It was further a part of the scheme that defendant SCOTT GOLDSTEIN fraudulently caused victims to give defendant GOLDSTEIN money in the form of wire transfers and checks payable to European Assets or defendant GOLDSTEIN, which money defendant GOLDSTEIN did not use for the purposes that he had promised the victims, in that defendant GOLDSTEIN did not obtain loans or investors for the victims or use the victims' money to purchase real estate.

15. It was further a part of the scheme that defendant SCOTT GOLDSTEIN deposited the money that defendant GOLDSTEIN had fraudulently obtained from victims into bank accounts in the names of European Assets and defendant GOLDSTEIN's

family members, and then used the victims' money for his own benefit to pay for his living expenses, including mortgage payments, and luxury purchases, including Mercedes Benz automobiles.

16. It was further a part of the scheme that, to conceal his acquisition of assets with the proceeds of the scheme, defendant SCOTT GOLDSTEIN put assets, including a Mercedes Benz CLS55-AMG, in the names of family members.

17. It was further a part of the scheme that, to conceal the scheme, defendant SCOTT GOLDSTEIN, on occasion sent money to victims using funds which defendant GOLDSTEIN had fraudulently obtained from other victims.

18. It was further a part of the scheme that, to conceal the scheme and retain the proceeds of the scheme, defendant SCOTT GOLDSTEIN, continued to make false representations to the victims that they would receive the return on their investment or a refund of their investment.

19. It was further a part of the scheme that, on or about October 18, 2011, to conceal the scheme and retain the proceeds of the scheme, defendant SCOTT GOLDSTEIN provided a victim with a check purporting to represent the return and profit on an investment, which check defendant GOLDSTEIN knew would be dishonored because it was written on a closed account.

20. It was further a part of the scheme that, on or about June 15, 2012, to conceal the scheme and his receipt of proceeds of the scheme, defendant SCOTT

GOLDSTEIN testified falsely under oath that European Assets only did consulting and was not involved in financial transactions, in particular that "We don't have any touching of funding, no touching of money, nothing financial. All we did was consulting."

21.     It was further a part of the scheme that, on or about July 18, 2012, to conceal the scheme and retain the proceeds of the scheme, defendant SCOTT GOLDSTEIN sent envelopes to victims by commercial interstate carrier which defendant GOLDSTEIN falsely represented to victims contained returns on investment and deeds and keys to properties, but which envelopes were empty.

22.     It was further part of the scheme that defendant SCOTT GOLDSTEIN did misrepresent, conceal, hide, and caused to be misrepresented, concealed, and hidden acts done in furtherance of the scheme and the purposes of those acts.

23.     On or about October 6, 2010, at Elk Grove Village, in the Northern District of Illinois, Eastern Division,

SCOTT GOLDSTEIN,

defendant herein, for the purpose of executing the scheme and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce, a writing, sign, and signal, namely an email message at approximately 4:44 p.m. soliciting money from Elk Grove Village, Illinois, to a victim in Covington, Louisiana;

In violation of Title 18, United States Code, Section 1343.

## COUNT TWO

The SPECIAL SEPTEMBER 2014 GRAND JURY further charges:

1. Paragraphs 1 through 22 of Count One of this indictment are incorporated here.

2. On or about October 6, 2010, at Elk Grove Village, in the Northern District of Illinois, Eastern Division,

SCOTT GOLDSTEIN,

defendant herein, for the purpose of executing the scheme and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce, a writing, sign, and signal, namely an email message at approximately 9:44 p.m. providing wire transfer instructions from Elk Grove Village, Illinois, to a victim in Covington, Louisiana;

In violation of Title 18, United States Code, Section 1343.

## COUNT THREE

The SPECIAL SEPTEMBER 2014 GRAND JURY further charges:

1. Paragraphs 1 through 22 of Count One of this indictment are incorporated here.

2. On or about October 7, 2010, at Elk Grove Village, in the Northern District of Illinois, Eastern Division,

SCOTT GOLDSTEIN,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, an interstate wire transfer through the Federal Reserve System in the amount of approximately $25,000 from a victim's account at the Regions Bank in Birmingham, Alabama to the account of a member of defendant GOLDSTEIN's family at Chase Bank in Elk Grove Village, Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT FOUR

The SPECIAL SEPTEMBER 2014 GRAND JURY further charges:

1. Paragraphs 1 through 22 of Count One of this indictment are incorporated here.

2. On or about July 18, 2012, at Elk Grove Village, in the Northern District of Illinois, Eastern Division,

SCOTT GOLDSTEIN,

defendant herein, for the purpose of executing the scheme to defraud, knowingly deposited and caused to be deposited, to be sent and delivered by Federal Express, an interstate commercial carrier, according to the directions thereon, an envelope purportedly from defendant GOLDSTEIN in Wesley Chapel, Florida, but in reality from Elk Grove Village, Illinois, addressed to a victim at ##### N. Cliff Bay, McHenry, Illinois, which purportedly contained the deeds and keys for the properties purchased by the victim;

In violation of Title 18, United States Code, Section 1341.

## COUNT FIVE

The SPECIAL SEPTEMBER 2014 GRAND JURY further charges:

1. Paragraphs 1 through 22 of Count One of this indictment are incorporated here.

2. On or about July 18, 2012, at Elk Grove Village, in the Northern District of Illinois, Eastern Division,

SCOTT GOLDSTEIN,

defendant herein, for the purpose of executing the scheme to defraud, knowingly deposited and caused to be deposited, to be sent and delivered by Federal Express, an interstate commercial carrier, according to the directions thereon, an envelope purportedly from defendant GOLDSTEIN in Wesley Chapel, Florida, but in reality from Elk Grove Village, Illinois, addressed to a victim at 240 Commerce Drive, Crystal Lake, Illinois, which purportedly contained a check representing the victim's return on his investment;

In violation of Title 18, United States Code, Section 1341.

## FORFEITURE ALLEGATION

The SPECIAL SEPTEMBER 2014 GRAND JURY further charges:

1.     The allegations of Counts One through Five of this indictment are incorporated here for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.     As a result of his violations of Title 18, United States Code, Sections 1341 and 1343 as alleged in the foregoing indictment,

SCOTT GOLDSTEIN,

defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all right, title, and interest they may have in any property, real and personal, that constitutes and is derived, directly and indirectly, from gross proceeds traceable to the commission of the offense, which property is subject to forfeiture pursuant to Title 18, United States Code, Section, 981(a)(1)(C) and Title 28, United States Code, Section 2461(c). Such property includes, but is not limited to, the following:

Two Hundred Forty-Five Thousand Five Hundred dollars ($245,500)

3.     If any of the forfeitable property described above, as a result of any act or omission by the defendant:

        a.     Cannot be located upon the exercise of due diligence;

        b.     Has been transferred or sold to, or deposited with, a third party;

11

  c. Has been placed beyond the jurisdiction of the Court;

  d. Has been substantially diminished in value; or

  e. Has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY